934 F.2d 320
 1991-1 Trade Cases 69,459, RICO Bus.Disp.Guide 7771
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
TEL-INSTRUMENT ELECTRONICS CORPORATION, Plaintiff-Appellant,
v.
TELEDYNE INDUSTRIES, INCORPORATED, Eugene R. Sullivan,
George H. Kaub, Michael Savaides, William L.
Parkin, Fred H. Lackner, Stuart E.
Berlin, Defendants-Appellees,
and
Dale Schnittjer, Crest, Incorporated, Defendants.
 No. 90-1549.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 19, 1991.
Decided May 28, 1991.
As Amended July 15, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CA-90-120-A)
 Frank W. Dunham, Jr., Cohen, Gettings, Alper & Dunham, Arlington, Va., for appellant.
 Thomas L. Patten, Latham & Watkins, Washington, D.C., for Craig C. Reilly, Murphy, McGettigan & West, P.C., Alexandria, Va., Mark H. Tuohey, III, Reed, Smith, Shaw & McClay, Washington, D.C., for appellees Michael Savaides, William L. Parkin, Fred H. Lackner, Stuart E. Berlin.
 E.D.Va.
 AFFIRMED.
 Before K.K. HALL, PHILLIPS and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Tel-Instrument Electronics Corporation (hereinafter Tel) appeals from the district court's order directing the verdict for the defendants on its 18 U.S.C. Secs. 1961 et seq., Racketeer Influenced and Corrupt Organizations Act; 15 U.S.C. Sec. 13, RobinsonPatman Act; and unlawful interference with a prospective business advantage claims. We affirm.
 
 I.
 
 2
 In March 1985, the United States Air Force decided to seek new competitive procurement bids for Identification Friend or Foe (hereinafter IFF) Transponder Test Sets. This was to be a tri-service procurement with the Naval Systems Engineering Activity in charge of the purchase description (hereinafter PD) and bid procurement. The adopted PD, very similar to the IFF produced by Teledyne Industries (hereinafter Teledyne), called for a handheld, single box unit with a uni-directional antenna, Mode 4, i.e., crypto code, capability, and restricted size. These requirements were considered crucial to the proper functioning and safety of the IFF under the diverse and harsh conditions it would be used in by the military. Because the Department of the Army had a "sense of urgency about the box," the procurement called for competitive 90day bid samples with the submission of two field-tested units.
 
 
 3
 In November 1985, Teledyne, who currently had the military IFF bid, decided to again seek the bid. A consultant was hired who attended the small business set aside meeting discussed below. Pursuant to a contract agreement, several of the appellees exchanged money to influence obtaining of this contract.
 
 
 4
 In May 1986, the IFF procurement was set aside as a Small Business Set Aside. This designation would have prevented Teledyne from submitting a bid, but would not have prevent Tel, a small business, from bidding. The small business set aside was challenged and rejected. Representatives attending the meeting to discuss the set aside felt that the small business competition was inadequate to support such a set aside. The Contracting Officer at Kelly Air Force Base testified that the set aside was not based in "sound technical assessment" and that if it had not been dropped, he would have recommended that the Air Force withdraw from the procurement.
 
 
 5
 Teledyne and Tel submitted bid samples. Although the procurement called for submission of two field-tested units, Tel submitted one two-box unit and a drawing of a single box unit. Teledyne submitted the required samples. The samples were tested. Tel's sample failed multiple key elements of the PD: it was not a single box unit; it did not have the proper antenna; it did not have Mode 4 capability; and it exceeded the size restrictions. Teledyne's bid samples met the PD and Teledyne was awarded the contract.
 
 
 6
 After Teledyne was awarded the contract, criminal charges of conspiracy against the United States government were brought against the appellees in this suit. The appellees pleaded guilty to or were convicted of conspiracy, filing false statements, wire fraud, bribery, or conspiracy to commit bribery.
 
 
 7
 Tel brought this present action. Tel alleged that if Teledyne had not illegally influenced the IFF procurement, by influencing the drafting of the PD and having the small business set aside rejected, the government would have accepted its bid. Finding that Tel had not established the RICO pattern requirements of continuity and duration, that there was no evidence that the appellees corrupted the bid process, and that Tel would not have been awarded the bid no matter what since its IFF bid sample failed to meet the PD, the district court directed the verdict for the appellees. On appeal, Tel claims that the appellees' previous guilty pleas and convictions should have collaterally estopped litigation of the civil conspiracy issues.
 
 II.
 
 8
 The district court admitted the judgments of convictions, plea agreements, and fact statements into evidence. See Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 571-72 (1951) (trial judge discretion to determine what parts of prior record are necessary to jury's understanding of issues decided in prior case); Columbia Plaza Corp. v. Security Nat'l Bank, 676 F.2d 780, 789-90 (D.C.Cir.1982). The district court properly executed its discretion in determining the nature and the extent of the use of collateral estoppel of the prior criminal proceedings in this civil case. See Emich, supra. We find Tel's allegation that the previous criminal pleas and convictions should have collaterally estopped litigation of the conspiracy issues to be without merit.
 
 III.
 
 9
 Our de novo review of the record indicates that the district court correctly directed the verdict for the appellees. See Parker v. Prudential Ins. Co., 900 F.2d 772, 776 (4th Cir.1990) (standard of review for substantive claims on directed verdict).
 
 
 10
 Tel had "no cognizable property interest in [the] mere expectation of [the IFF] contract that the government [could have] award[ed] to any or none...." United States v. Berlin, 707 F.Supp. 832, 835 (E.D.Va.1989). To establish a civil RICO violation, Tel had to demonstrate that the appellees violated Sec. 1962 and that this violation injured its business or property. Brandenburg v. Seidel, 859 F.2d 1179 (4th Cir.1988). Here, Tel cannot prove any injury because it would not have been awarded the IFF contract regardless. The single-box unit, antenna, Mode 4 capability, and size of the IFF were all essential elements of the PD which the Tel bid sample failed. Testimony affirmed that even if Teledyne had not submitted a bid, Tel would not have been awarded the contract; instead the procurement process would have been reinitiated. Moreover, Tel could not prove a Robinson-Patman violation because Tel's IFF was not of the "like grade and quality" of Teledyne's IFF. 15 U.S.C. Sec. 13(a).
 
 
 11
 Tel's claim of tortious interference fails for similar reasons. Under this theory, Tel had to be able to prove with "reasonable certainty that absent the defendant's intentional misconduct, [Tel] would have ... realized the expectancy"; moreover, Tel must be able to prove that it was damaged. Glass v. Glass, 228 Va. 39, 51, 321 S.E.2d 69, 76 (1984). Since Tel would not have been awarded the contract no matter what, Tel cannot prove damage.
 
 
 12
 Accordingly, we affirm the decision of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 13
 AFFIRMED.